### LAKE SHORE & M. S. RY. v. ELYRIA (CITY).

MUNICIPALITIES CANNOT CONTRACT TO SUPPLY WATER TO RAILROAD COMPANY AT SPECIAL RATE AND GIVEN TIME.

The power to "assess and collect * * * water rent" prescribed by Gen. Code 3958, means power to fix general rates to be assessed equally upon all water takers of a given class; the director is not authorized by this section to bind a municipality for a period of years by special contracts with individual takers.

[Syllabus approved by the court.]

ERROR to common pleas court.

This is an action by which the city seeks to recover from the Lake Shore & Michigan Southern Railway Co. for water used by the railway company in its watering tanks and at the depot for flushing closets, etc.

A petition and answer were filed and then the case was submitted to the court upon an agreed statement of facts, in which it is agreed:

"That the plaintiff is a municipal corporation and that the defendant is a railway corporation operating its railway through the city of Elyria, Ohio.

"That said city owns and operates a system of waterworks which is under the charge and control of the board of public service, according to law.

"That on May 18, 1905, the board of public service of said city entered into the agreement which is marked Exhibit A and attached to the defendant's answer herein."

This contract reads as follows:

"This agreement, made May 18, 1905, by and between the city of Elyria, by its board of public service, party of the first part, and the Lake Shore & Michigan Southern Railway Company, party of the second part, WITNESSETH:—

"That first party does hereby agree to furnish to second party, at such points on first party's water pipe lines as second party may choose to take the same, such quantities of water as second party may need for its use in said city, all water furnished to be metered and to be furnished at the rate of six cents per thousand gallons, bills to be rendered monthly, second party being privileged to read or inspect meters jointly with first party.

"That the second party agrees to take said water to the amount of at least fifty million gallons per year, and to pay first party for the same on the rendition of monthly bills therefor at the rate of six cents per thousand gallons.

"That this agreement shall take effect January 1, 1905, and continue for the period of five years, but it is understood and agreed that if at any time the first party shall fail to furnish second party with a sufficient supply of water and of a quality satisfactory for its purposes, second party may terminate this contract."

"That said contract was signed by the members of the board of public service and was approved by the solicitor of said city and all the formalities required by law relating to contracts made with municipal corporations were complied with; but the said contract was not approved by the council of said city, nor authorized by said council.

"That in pursuance of said contract plaintiff began the furnishing of water and the defendant the using thereof under said contract, and that said defendant complied with the terms of said contract, and that the defendant paid and the city accepted pay for water furnished under said contract according to the terms of said contract until shortly prior to October 1, 1908, when the plaintiff notified the defendant that beginning October 1, 1908, it would not furnish water to the defendant for the price named in said contract, but would charge defendant a higher rate for water thereafter furnished.

"That the plaintiff continued to furnish water and the defendant used the amount of water claimed in plaintiff's petition, but refused to pay therefor except at the price named in

said contract, which defendant was willing to do, but which plaintiff refused to accept.

"It is further agreed that if the court shall find that said contract is not binding on the city, then the court shall render judgment against the defendant for the amount claimed in the petition, but if the court finds that said contract is binding upon the plaintiff, then the defendant shall pay for said amount of water consumed at the rate of six cents per one thousand gallons, and in the event the petition shall be dismissed at the costs of the plaintiff."

*E. G., H. C. & T. C. Johnson,* for plaintiff in error.

*H. A. Pounds,* city solicitor, for defendant in error:

This is a contract with a municipal corporation, and the law with reference to the rights of the parties under those circumstances is well stated in *Schaaf* v. *Railway,* 65 Ohio St. 219 [64 N. E. Rep. 145].

While there is implied municipal liability at common law, the statutes of this state provide the manner in which contracts, agreements, obligations and appropriations shall be made and entered into by municipalities, and they cannot be entered into otherwise than as provided by statute.

There has been no implied municipal liability in matters *ex contractu* in this state since the passage of the act of April 8, 1876 (73 O. L. 125), part of which now forms R. S. 1693.

To state a good cause of action against a municipality in matters *ex contractu,* the petition must declare upon a contract, agreement, obligation, or appropriation made and entered into according to statute. A petition on an account merely, or *quantum meruit,* in such cases is not sufficient.

Persons dealing with officers of municipalities must ascertain for themselves and at their own peril that the provisions of the statutes applicable to the making of the contract, agreement, obligation or appropriation have been complied with.

WINCH, J.

The sole question in this case is whether the board of public service of the city of Elyria had power to enter into a con-

Lorain County.

tract with the railroad company to supply it with water at a given rate for five years, the company agreeing to take and pay for not less than a stipulated quantity of water each year during the continuance of the contract.

Two sections of the statutes require consideration in connection with this question. R. S. 2425 (Gen. Code 3973) provides:

"Any city or village which has established or hereafter establishes waterworks, may enter into a contract with any contiguous city or village for the supply of the latter with water, upon such terms as shall be mutually agreed upon by the councils of the respective municipal corporations; and any city or village which has waterworks, is hereby authorized and empowered to dispose of any surplus water, for manufacturing or other purposes, by lease or otherwise, upon such terms as may be agreed upon by the board of trustees of the waterworks, or public works, and approved by the council of such city or village.".

Manifestly the contract here involved, if it be considered as an agreement concerning the disposition of surplus water, cannot be sustained, because it was not approved by the city council.

The other section is R. S. 2411 (Gen. Code 3958), which reads as follows:

"For the purpose of paying the expenses of conducting and managing the waterworks, * * * the trustees or board shall have the power to assess and collect from time to time a water rent of sufficient amount in such manner as they may deem most equitable upon all tenements and premises supplied with water."

The power here granted to "assess and collect from time to time a water rent," must be taken as meaning the power to fix general rates which shall be assessed equally upon all water takers of a given class, and we so hold. The board is not here authorized to tie its hands or that of the city for a period of years by special contracts entered into with individual takers. Such contracts are authorized under certain circumstances by the other section referred to. Having legislated particularly

Railway v. Elyria.

upon the subject, the general power granted by the legislature should not be amplified by judicial interpretation, "*expressio unius est exclusio alterius.*"

The judgment of the common pleas court being in accordance with the views here expressed, it is affirmed.

**Marvin** and **Henry, JJ.,** concur.

---

## DAMAGES—FALSE IMPRISONMENT.

[Franklin (2nd) Circuit Court, January 17, 1911.]

Jones, Allread and Rockel, JJ.

(Judge Jones of the fourth circuit sitting in place of Judge Dustin.)